**UNITED STATES** of America ex rel. William Nick **DONGAS**, aka William Nicholas Dongas, Relator,

v.

Robert H. **ROBINSON**, District Director, Chicago District, Immigration and Naturalization Service, and All Other Officers, Agents and Employees of Said Chicago District Office of the Immigration and Naturalization Service, Respondents.

No. 55 C 2266.

United States District Court
N. D. Illinois, E. D.

May 17, 1956.

C. N. Avgerin, Chicago, Ill., for relator.

R. Tieken, U. S. Atty., Chicago, Ill., for respondents.

PERRY, District Judge.

An examination of the files and records in this habeas corpus proceeding reveals the following: Relator, a native and citizen of Greece, lawfully entered the United States at Norfolk, Virginia, on March 17, 1948 as a seaman under Section 3(5) of the Immigration Act of 1924, 43 Stat. 153, for a period of time not to exceed 29 days, but has remained continuously in this country since his said entry on March 17, 1948. Subsequent to such entry, Relator married a citizen of the United States and now has two children, both born in this country. He voluntarily surrendered himself and made application on May 17, 1951 for voluntary departure and pre-examination. On September 12, 1951, pre-examination was authorized on condition that a visa would be readily available. However, in August, 1952, after various delays, Relator was informed by the American Consul in Canada that the first preference portion of the Greek quota to which he was then chargeable, was oversubscribed and that his application for registration on the waiting list would be refused while he was in the United States. On October 16, 1952, Relator was granted the privilege of voluntary departure but, instead of leaving, he again applied for pre-examination and on that date (October 16, 1952) a warrant for his arrest was issued. He was released on parole. Pre-examination was again authorized on May 4, 1953, pursuant to Relator's said application made on October 16, 1952, and he was granted

several extensions of time within which to depart. In December of 1953, Relator informed the Immigration and Naturalization Service that he had been advised by the American Consul at Windsor that for administrative reasons an appointment could not be granted Relator to appear at the consulate for a personal interview. Further extensions were granted him and he was finally notified to depart from this country on or before May 1, 1954. He did not depart before that date and so, pursuant to the warrant of arrest which had been served on October 16, 1952, a hearing was held before a Special Inquiry Officer of the Immigration and Naturalization Service. At that hearing, Relator charges, secret and confidential information was relied upon by the Special Inquiry Officer in reaching his decision to deny the discretionary relief sought.

Reference to the Special Inquiry Officer's report shows that on March 18, 1955 he found that—

"The respondent has established statutory eligibility for voluntary departure in lieu of deportation. However, on the basis of confidential information, the disclosure of which would be prejudicial to the best interests of the United States, it is concluded that discretionary relief in the form of voluntary departure and preexamination must be denied as a matter of administrative discretion."

Relator thereupon appealed to the Board of Immigration Appeals which dismissed his appeal, saying:

"There is confidential information to sustain the special inquiry officer's conclusion that to grant the discretionary relief of voluntary departure is not warranted in this case. Confidential information is not considered when determining an issue or question of deportability, but it is proper to use such information in considering the issue of discretionary relief. The use of such

information for this purpose is sanctioned by 8 CFR, 244.3"[1]

■ At this point, it should be observed that the proceedings with which we are here concerned are not governed by the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1101 et seq., but by the Immigration Act of 1917, 39 Stat. 874. (1) Relator's application, made in 1951, for voluntary departure was not granted until October 16, 1952. It was therefore pending on June 27, 1952 when the 1952 Act was passed, and Relator's rights under previous legislation were preserved by the Savings Clause of the said 1952 Act. Section 405(a) U.S.Code Cong. and Adm.News 1952, pp. 274, 275; 8 U.S.C.A. § 1101 note. (2) The deportation process commenced on October 16, 1952 with the service of a warrant of arrest issued before the Immigration Act of 1952 went into effect. Orahovats v. Brownell, D.C., 134 F.Supp. 84. The Act became effective 180 days after June 27, 1952, or on December 24, 1952. Section 407, U.S.Code Cong. and Adm.News 1952, p. 275, 8 U.S.C.A. § 1101 note.

■ The Regulation described as 8 CFR 244.3 was issued pursuant to the Immigration and Nationality Act of 1952 and therefore would not be applicable to the case at bar which must be resolved on the basis of former regulations. As Judge Morris said when referring to the same regulation in the case of Maeztu v. Brownell, D.C., 132 F.Supp. 751, 753:

"* * * the mere fact of its promulgation is, I believe, a clear administrative recognition that absent such regulation there is no legislative sanction for such procedure as was had in the instant case."

Since 8 CFR 244.3 does not apply to the instant case and the question is therefore not now before the Court, there is no need at this time to discuss the validity of that regulation as applied to cases which do come under the 1952 Immigration and Nationality Act. It is difficult, however, to reconcile the traditions and basic principles of our government with a regulation which permits a hearing officer to arrive at a decision based on secret and confidential information—information which, in some instances, conceivably might have its origin in nothing more than the fertile imagination or personal hostility of the informant.

This Court does not advocate or approve the disclosure of the *source* of any such secret or confidential information; but the information itself should certainly be made available and of record so that the person concerned may have an opportunity to combat and refute it.

■ In the case at bar, secret information was not only considered but was relied on, in totality, as the basis for denial of the discretionary relief sought —an arbitrary proceeding, indeed, when it is recalled that, in addition to the future of Relator, there is also involved here the futures and perhaps the lives of three American citizens.

The case is remanded to the Immigration and Naturalization Service for further proceedings. Order accordingly.

---

1. 8 CFR 244.3 reads as follows:
   "*Use of confidential information.* In the case of an alien qualified for voluntary departure or suspension of deportation under section 242 or 244 of the Immigration and Nationality Act the determination as to whether the application for voluntary departure or suspension of deportation shall be granted or denied (whether such determination is made initially or on appeal) may be predicated upon confidential information without the disclosure thereof to the applicant, if in the opinion of the officer or the Board making the determination the disclosure of such information would be prejudicial to the public interest, safety, or security."